NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CONSECO LIFE INSURANCE COMPANY, | Civil Action No. 2:11-cv-3716 (SDW) (MCA) |
| Plaintiff, | |
| v. | **OPINION** |
| ASHLEY C. SMITH and EDITH MASINO HEADY, | |
| | June 26, 2013 |
| Defendants. | |

**WIGENTON**, District Judge.

Before this Court are: (1) Plaintiff Conseco Life Insurance Company's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, (2) Defendant Ashley C. Smith's cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, (3) Defendant Edith Masino-Heady's cross-motion for summary judgment also pursuant to Federal Rule of Civil Procedure 56, and (4) Defendant Edith Masino-Heady's motion to strike un-pled fraud claims by Plaintiff Conseco Life Insurance Company. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **DENIES** Plaintiff's and both Defendants' motions for summary judgment, and **GRANTS** Edith Masino-Heady's motion to strike.

## I.  BACKGROUND

This case involves a dispute between Plaintiff Conseco Life Insurance Company ("Conseco Life" or "Plaintiff") and Defendant Ashley C. Smith and Defendant Edith Masino-Heady, respectively, regarding alleged misrepresentations on a life insurance application by Mr. Todd Martin Smith, who is deceased. Mr. Smith originally named his daughter, Defendant Ashley C.

Smith, as his beneficiary and later changed the beneficiary to his girlfriend, Edith Masino-Heady. Both Defendants state a claim to the life insurance policy; however, Plaintiff seeks to rescind the life insurance policy due to Mr. Smith's alleged commission of equitable fraud.

## II. FACTS

### a. Application for Life Insurance

On January 24, 1989, Mr. Smith, a resident of Wharton, NJ, applied for a $200,000 life insurance policy with Philadelphia Life Insurance Company, a predecessor to Conseco Life. (*See* Pl.'s Statement of Material Facts Not in Dispute ("Pl.'s Facts") ¶ 1.) Question 6(a) of part one ("Question Six") of the application form ("Application") asked Mr. Smith whether he had participated in motor racing during the year prior to applying for life insurance. (*See id.* ¶ 2.) Mr. Smith responded that he had not. (*See id.*) Question four of part one of the Application asked Mr. Smith whether he had any other life insurance policies or annuities in place. (*See id.* ¶ 3.) Mr. Smith indicated that he did not. (*See id.*) Also, question 7(d) of part one asked whether any applications or policies for life or health insurance had been declined, special rated, restricted, postponed, cancelled, or denied reinstatement. (*See id.* ¶ 4.) Mr. Smith indicated that none had been. (*See id.*) Question 7(e) of part one of the Application asked whether Mr. Smith was "currently [applying] for or had a life or health application pending in [another] company", and Mr. Smith answered that he was not nor did he have any. (*Id.*) Question two of part four of the Application asked Mr. Smith for his income, which he indicated was "$75,000+." (*Id.* ¶ 5.) Question 3(a) and (b) of part three of the Application asked whether "any person to be covered, within the past 5 years: (a) "had a checkup, consultation, illness, injury or operation," or (b) "[had] been a patient in a hospital, clinic, sanitarium, or other medical facility?" (*See id.* ¶ 6.) Mr. Smith answered "no" to both of these questions. (*See id.*) Question 2(h) on part three of the Application asked "[t]o the best of your knowledge, within the past ten (10) years, has any person to be covered

had or been told he had or been treated for: [d]isorder of skin, lymph glands, tumor or cancer?" (*Id.*) Mr. Smith answered "no." (*See id.*) On the Application, Mr. Smith designated his daughter, Defendant Ashley Smith, as his beneficiary. (*See id.* ¶ 7.)

On February 10, 1989, Conseco Life issued policy number 7244067 to Mr. Smith at a standard non smoker rate, with a premium of $100 per month, which included a purchase Rider for Waiver of Monthly Premiums at a standard rate. (*See id.* ¶ 8.) The policy has a two-year contestability period in the event of misrepresentations made by Mr. Smith. (*See id.* ¶ 9.) On May 17, 1989, Mr. Smith changed his beneficiary on his Conseco Life insurance policy from his daughter to his girlfriend, Ms. Edith Masino-Heady. (*See id.* ¶ 10.)

### b. *Mr. Smith's Death and Events Leading up to the Current Lawsuit*

On May 17, 1989, Mr. Smith disappeared. (*See id.* ¶ 11.) On May 18, 1989, Ms. Masino-Heady reported to police that Mr. Smith was missing. (*See id.*) The Rockaway Police Department and the Morris County Prosecutor's Office conducted investigations into Mr. Smith's disappearance, but could not ascertain his whereabouts. (*See id.* ¶ 17.) It was later discovered that on the evening of May 18, 1989, Mr. Smith drowned in the Atlantic Ocean in Daytona Beach, FL. (*See id.* ¶ 12.) Mr. Smith's body was recovered the following morning; however, because his identity was indeterminable at the time, he was listed by the medical examiner as John Doe #5. (*See id.*) In January 2008, a forensic technician working on cold cases determined that the body listed as John Doe #5 was Mr. Smith. (*See id.*)

On September 10, 2008, Ms. Smith submitted a claim to Conseco Life for Mr. Smith's policy benefits. (*See id.* ¶ 15.) Ms. Smith stated on her claim form that Mr. Smith had two other life insurance policies, including a $100,000 life insurance policy from William Penn Life Insurance Company, and a disability policy. (*See id.* ¶ 16.) Ms. Smith was the beneficiary of the William Penn policy, which was still an existing policy at the time of Mr. Smith's death. (*See id.* ¶¶ 34-35.)

3

On May 13, 2010, Ms. Masino-Heady also submitted a claim to Conseco Life for Mr. Smith's policy benefits. (*See* Pl.'s Facts ¶ 13.) On her claim form, Ms. Masino-Heady stated that Mr. Smith had the same additional policies that Ms. Smith mentioned. (*See id.* ¶ 14.)

During investigations into Mr. Smith's disappearance, law enforcement learned from Ms. Masino-Heady that Mr. Smith was interested in motor-cross racing. (*See* Certification of Umar A. Sheikh ("Sheikh Cert.") Ex. 3, MCPro000025.) An investigator from the Morris County Prosecutor's Office who spoke with Ms. Masino-Heady was told that Mr. Smith's only hobby was motor-cross racing, that he only spent money on his motorcycles, and that Mr. Smith rode his motorcycle every Sunday recreationally or in a race. (*See id.* at MCPro000066-67.) Ms. Masino-Heady also told the investigator that Mr. Smith was a member of the North Jersey Bike Club, Enduro Racer. (*See id.* at MCPro000067.) The same investigator learned that Mr. Smith became a member of the American Motorcyclist Association in 1987 and that his membership was due to expire in March 1990. (*See id.* at MCPro000179.) Mr. Smith competed in the Curly Fern Enduro Race on April 2, 1989 in the Wharton State Forest. (*See* Pl.'s Facts ¶ 27.) Mr. Smith also raced the weekend before his disappearance. (*See* Pl.'s Facts ¶ 28.) Mr. Smith had one motorcycle that was strictly for racing, a 1987 Honda CR-250, as well as a 1998 Kawasaki and a 1989 Honda. (*See id.* ¶¶ 28-29.)

Through its own investigations, Conseco Life learned that Mr. Smith's income was approximately $37,000 in 1988. (*See id.* ¶ 32.) Additionally, Conseco Life learned that on May 2, 1989 Mr. Smith filed for bankruptcy. (*See id.*) Moreover, the investigations revealed that on December 13, 1988, less than a month before Mr. Smith filed the Application with Conseco Life, he was at Dover General Hospital for surgical removal of a lump in his chest wall that resulted in a two inch scar. (*See id.* ¶ 37.)

Based on these facts, Conseco Life seeks to rescind Mr. Smith's life insurance policy due to equitable fraud, which resulted from Mr. Smith's incorrect answers to questions pertaining to: (1) risky behavior, (2) additional insurance, (3) previous surgeries, and (4) financial income.

### c. *Ms. Smith's Factual Disputes*

Ms. Smith first disputes that her father, Mr. Smith, executed a change of beneficiary form on his policy with Conseco Life. (*See* Ashley Smith's Ans. to Pl.'s Statement of Material Facts ("Ms. Smith's Facts") ¶ 10.) Ms. Smith contends that through discovery, it has come to light that Mr. Smith executed a change of beneficiary form the day of his disappearance, but that the form was not completed until May 30, 1989, eleven days after Mr. Smith's body was retrieved in Daytona Beach, FL. (*See id.*) Ms. Smith also disputes that Mr. Smith's only hobby was motor-cross racing and that he was well known for being into motor-cross racing. (*See id.* ¶¶ 20-21.) Ms. Smith contends that Mr. Smith "had not raced motorcycles for at least two years prior to his application for life insurance [with Conseco Life.]" (*Id.* ¶ 20) In that same vein, Ms. Smith also contends that Mr. Smith did not spend his money solely on his motorcycles. (*See id.* ¶ 22.) Ms. Smith also disputes Plaintiff's assertion that Mr. Smith rode his motorcycle every Sunday, that he participated in the Curly Fern Enduro Race on April 2, 1989, and that he participated in a race the weekend before he disappeared. (*See id.* ¶¶ 27-28.) Regarding Plaintiff's assertion that the information Ms. Masino-Heady gave to the police is accurate, Ms. Smith contends that Ms. Masino-Heady testified that she had not reviewed the entire police report and therefore cannot speak to its accuracy. (*See id.* ¶ 31.) Ms. Smith also contends that discovery between the parties has not revealed any medical records to prove Mr. Smith underwent any surgery before his Application. (*See id.* ¶ 37.) Last, Ms. Smith denies any statements, assertions, or facts relied upon by Plaintiff

that were alleged in Bill Breshears' affidavit[1] because Mr. Breshears was neither listed on Plaintiff's Rule 26 disclosures, nor mentioned in Plaintiff's answers to discovery. (*See id.* ¶¶ 38-41.)

   *d. Ms. Masino-Heady's Motion to Strike*

Ms. Masino-Heady seeks to strike three of Plaintiff's theories for equitable fraud: (1) additional insurance, (2) previous surgeries, and (3) financial income. (*See* Ms. Masino-Heady's Br. in Supp. of Mot. to Strike 6.) Ms. Masino-Heady seeks to strike these claims because they were not included in Plaintiff's Complaint and were introduced for the first time in Plaintiff's summary judgment brief.

## III. LEGAL STANDARD

   *a. Motion to Strike*

The adequacy of pleadings is governed by Federal Rule of Civil Procedure 8(a) (2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). When the claims in a complaint sound in fraud or misrepresentation, they "must state with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b).

   *b. Summary Judgment*

---

[1] Bill Breshears is the director of underwriting for CNO Services, LLC. In that capacity he provides services to Conseco Life pertaining to insurance policy underwriting. (*See* Sheikh Cert. Ex. 1.) Conseco Life submitted Mr. Breshears affidavit, dated January 14, 2013, as an exhibit to its motion for summary judgment.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter but rather should determine whether there is a genuine issue as to a material fact. *See Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in "a light most favorable" to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 521 (1991). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

## IV. DISCUSSION

### a. *Motion to Strike*

7

A plaintiff cannot raise claims for the first time at the summary judgment stage, if they were not included in their Complaint. *See Bell v. City of Philadelphia,* 275 Fed. App'x. 157, 160 (3d Cir. 2008) (holding that, at the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with the Fed. R. Civ. P. 15(a)); *see also Trenton v. Scott Paper Co.*, 832 F.2d 806, 810 (3d Cir. 1987) (rejecting a claim the appellants raised for the first time in their motion for summary judgment as outside the scope of the pleadings as well as not a matter of record). Here, Conseco Life introduced three of its four theories of equitable fraud in its summary judgment brief. Accordingly, this Court will not consider Conseco Life's equitable fraud claims based on: (1) additional insurance, (2) previous surgeries, or (3) financial income.

In addition to moving to strike Plaintiff's un-pled claims, Ms. Masino-Heady preemptively argues that Conseco Life should not be permitted to amend its complaint because doing so would unfairly prejudice her.[2]

"[A] motion for leave to amend a complaint [is] addressed to the sound discretion of the district court." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001). "A district court may deny leave to amend a complaint if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party." *Id.* at 272-73 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Case law provides that

> The mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay. In fact, delay alone is an insufficient ground to deny leave to amend. However, at some point, the delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party. Delay may become undue when a movant has had previous opportunities to amend a complaint. . . . [W]hile bearing in mind the liberal pleading philosophy of the federal rules, the question of undue delay requires that we focus on the movant's reasons for not amending sooner. [S]ubstantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend.

---

[2] Ms. Smith also argues in her opposition brief/cross-motion that Plaintiff's additional theories of equitable fraud should not be considered given the current stage of litigation and Plaintiff's failure to amend its complaint before filing its summary judgment motion. (*See* Ms. Smith's Opp'n Br./ Cross-Mot. 20-21.)

*Id.* at 273 (internal citations and quotations omitted). When analyzing undue prejudice on a non-moving party, the focus is on the hardship to the non-movant if an amendment is permitted. *See id.* "To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction." *Lloyd v. Augme Techs., Inc.*, Civ.A. No. 11-4071(JAP), 2012 WL 2952451, at *4 (D.N.J. July 19, 2012) (internal citation omitted).

Here, Ms. Masino-Heady points out that Conseco Life should not be permitted to amend its complaint because it knew about the three additional theories of equitable fraud long before it sought summary judgment. (*See* Ms. Masino Br. in Supp. Mot. to Strike 7.) Indeed, the exhibit attached to Ms. Masino-Heady's moving brief demonstrates that Conseco Life knew about the alleged falsity of some of Mr. Smith's responses on his Application as far back as August 2009. (*See* Ms. Masino-Heady's Br. in Supp. Mot. to Strike, Ex. 1.) Conseco Life did not file its summary judgment motion until January 2013; therefore, Conseco Life had ample time before filing its summary judgment motion to amend its Complaint. (*See* Dkt. No. 41.) Conseco Life has not advanced an explanation for its failure to seek an amendment of its complaint before filing its summary judgment motion. However, as case law makes clear, delay alone is not enough to deny a plaintiff the opportunity to amend a complaint. *See Cureton*, 252 F.3d at 273. Instead, the delay must be undue, i.e., causing either a burden on the court or prejudice to the nonmovant. Ms. Masino-Heady argues that allowing Conseco Life to amend its complaint would cause her undue prejudice as it would result in additional discovery, a delay in the adjudication of this case, and ultimately increase legal expenses. (*See* Ms. Masino-Heady's Br. in Supp. Mot. to

Strike 8.) Specifically, Ms. Masino-Heady argues that permitting Conseco Life to amend its complaint will require her to "initiate discovery requests to obtain underwriting policies and procedures used by Philadelphia Life Insurance Company in 1989, examples of underwriting decisions if [sic] similar cases, the identity of underwriting personnel who worked at Philadelphia Life at the time, and several depositions of current and former personnel." (*Id.*) Ms. Masino-Heady also argues that she would have to "identify potential expert witnesses as to the new [legal theories] . . . and conduct expert discovery as to Bill Breshears . . . as well as a number of additional Conseco employees." (*Id.* at 8-9.) Ms. Masino-Heady has sufficiently demonstrated that permitting Conseco to amend its complaint would "require [her] to expend significant additional resources to conduct discovery and prepare for trial." *See Lloyd*, 2012 WL 2952451, at *4. Accordingly, this Court finds that permitting Plaintiff to amend its complaint at this stage of the litigation would unfairly prejudice Ms. Masino-Heady.[3]

  b. *Summary Judgment Motion*

    i. <u>Burden of Proof</u>

Conseco Life seeks to rescind Mr. Smith's life insurance policy pursuant to the doctrine of equitable fraud. Ms. Masino-Heady argues that Conseco Life cannot seek rescission of Mr. Smith's policy under the theory of equitable fraud due to the expiration of the contestability period. (*See* Ms. Masino-Heady's Br. in Supp./Opp'n Br. 9.) Instead, Ms. Masino-Heady argues for legal fraud. (*See id.* at 9-10.) Under New Jersey law, the rescission of an insurance policy must be sought through proving legal fraud, as opposed to equitable fraud, if rescission is sought after the contestability period, which is usually two years after the contract/policy has been in force. *See* N.J.

---

[3] This Court's conclusion regarding Ms. Masino-Heady's motion to strike applies equally to Ms. Smith.

STAT. ANN. § 17B:25-4. Here, the contestability period for Mr. Smith's policy was indeed two years. (*See* Sheikh Cert Ex. A to Ex. 1 at 11.)

While Ms. Masino-Heady is incorrect that Conseco Life brought its claim after the contestability period – Conseco Life issued Mr. Smith's policy on February 10, 1989 and Mr. Smith drowned in the Atlantic Ocean on May 18, 1989 – she is correct that the applicable burden of proof is the clear and convincing standard. *See Batka v. Liberty Mut. Fire Ins. Co.*, 704 F.2d 684, 688 (3d Cir. 1983) *abrogation recognized by Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 214 F. Supp. 2d 453, 456 (D.N.J. 2002); *Marsellis-Warner Corp. v. Rabens*, 51 F. Supp. 2d 508, 521 n.11 (D.N.J. 1999).

### ii. Equitable Fraud

"In general, equitable fraud requires proof of (1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental reliance by the other party." *Liebling v. Garden State Indem.*, 337 N.J. Super. 447, 453 (App. Div.), *cert. denied*, 169 N.J. 606 (2001). "To establish a claim for equitable fraud, [Conseco Life] must demonstrate that the application for insurance contained misrepresentations and those misrepresentations 'materially affected either [its] acceptance of the risk or the hazard assumed by [Conseco Life].'" *Allianz Life Ins. Co. of Am. v. Estate of Bleich*, No. Civ.A. 08-668(SDW) (MCA), 2012 WL 714686, at *7 (D.N.J. Mar. 5, 2012) (citing N.J. STAT. ANN. § 17B:24-3(d)). Even an innocent misrepresentation can constitute equitable fraud justifying rescission. *See Metropolitan Life Ins. Co. v. Tarnowski*, 130 N.J. Eq. 1, 3-4 (1941).

It is important for this Court to first consider whether the alleged misrepresentation was in response to a subjective or objective question. *See Formosa v. Equitable Life Assurance Soc'y of U.S.*, 166 N.J. Super. 8, 15 (App. Div. 1979). While life insurance policies can be rescinded on the basis of equitable fraud due to a material misrepresentation, application of said rule is not always

11

clear-cut. Instead "[t]he rule is applied rather strictly to objective questions in an application for insurance, the answers to which must be within the applicant's knowledge, such as whether the applicant has been examined or treated by a physician." *Formosa*, 166 N.J. Super. at 15. "However, the rule does not apply to the same extent in dealing with subjective questions, such as what is the state of the applicant's health or whether the applicant has or has had a specified disease or illness." *Id.* "With respect to subjective questions, [New Jersey] courts have held that such questions seek to probe the applicant's state of mind, and if a negative answer is a correct statement of his knowledge and belief it is not a misrepresentation, and thus does not constitute equitable fraud." *Id.* (internal citations omitted).

Here, Plaintiff argues that Question Six, which inquired into Mr. Smith's possible risky conduct, is objective because it calls for factual information within Mr. Smith's knowledge. This Court, however, finds that Question Six is subjective as it called for Mr. Smith's state of mind regarding his risky activity i.e. motor-cross racing. Unlike an objective question, Question Six is ambiguous because it is unclear what "motor-cross racing" means i.e. racing in a competition as opposed to racing against colleagues recreationally.

In addition to Plaintiff's argument being factually unavailing, it is also logically misplaced. Among other things, Conseco Life's equitable fraud argument regarding Mr. Smith's motor-cross racing is based on evidence discovered during investigations into Mr. Smith's disappearance. Conseco Life makes the argument that by Mr. Smith competing in the Curly Fern Enduro Race on April 2, 1989, shortly before his death, it is appropriate to conclude that he participated in motor-cross racing during the year prior to completing his Application. (*See* Pl.'s Br. in Supp. 16.) Conseco Life's factual leap would make Mr. Smith's response to Question Six on his Application fraudulent. (*See id.* at 15-16.) However, the fact that Mr. Smith raced in the Curly Fern Enduro

Race after completing his Application provides insufficient evidence to conclude that Mr. Smith was racing during the year prior to completing his Application.

Conseco Life also relies on evidence discovered during the investigation into Mr. Smith's disappearance to argue that Mr. Smith's response to Question Six was fraudulent because, according to Ms. Masino-Heady, Mr. Smith used to ride his motorcycle every weekend, was a motor-cross racing enthusiast, and only spent money on his motorcycles. Ms. Masino-Heady clarifies in her opposition brief/cross-motion that her statements to investigators were not contemporaneously recorded and, as a result, were taken out of context.[4] (*See* Ms. Masino-Heady's Br. in Supp./Cross-Mot. Summ. J. 15-16.) Ms. Masino-Heady highlights that Conseco Life failed to mention the existence of deposition testimony from Ms. Masino-Heady where she explicitly denied that Mr. Smith raced motorcycles during the year prior to the Application. (*See id.* at 15.) Ms. Masino-Heady also points out that Conseco Life failed to mention the existence of deposition testimony from Mr. Smith's ex-wife and sister who also denied that Mr. Smith raced motorcycles during the year prior to the Application. (*See id.*) Mr. Smith's ex-wife and sister actually stated that Mr. Smith foreswore motorcycle racing after the birth of his daughter, which was two years before the Application. (*See id.*)[5]

In light of the above, there are issues regarding the facts that form the basis of Conseco Life's equitable fraud argument. Conseco Life cannot satisfy the first element of an equitable fraud claim and therefore cannot establish equitable fraud by clear and convincing evidence. Accordingly, Conseco Life's motion is denied.

### iii. Ms. Masino-Heady's Cross-Motion

---

[4] Ms. Masino-Heady's statement that Mr. Smith's was a fan of motor-cross racing was indeed accurate. (*See* Ms. Masino-Heady Opp'n Br. 17.)

[5] Ms. Smith also disputes the evidence on which Conseco Life relies to argue that Mr. Smith's response to Question Six was fraudulent by highlighting the existence of deposition testimony from Mr. Smith's ex-wife and sister. (*See* Ms. Smith's Opp'n Br./Cross-Mot. 17-18.)

Ms. Masino-Heady's motion for summary judgment is based on her contention that Conseco Life cannot satisfy its burden to invalidate Mr. Smith's policy. (*See* Ms. Masino-Heady's Br. in Supp./Cross-Mot. Summ. J. 19.) Additionally, Ms. Masino-Heady argues that Conseco Life's inability to satisfy its burden means that there is no issue of material fact in dispute regarding the enforceability of Mr. Smith's policy and her claim to the policy benefits. (*See id.*) Ms. Masino-Heady argues that, as a result, judgment should be entered against Conseco Life in the amount of $503,223.91 with interest compounded at 4% from November 26, 2012 to the date of judgment and at the legal rate thereafter. (*See id.*) Ms. Masino-Heady argues that the only remaining issue is that of the rightful beneficiary. Given this Court's analysis and findings regarding Conseco Life's motion, Ms. Masino-Heady's motion is also denied.

### iv. Ms. Smith's Cross-Motion

Similar to Ms. Masino-Heady, Ms. Smith seeks summary judgment solely on the basis that Conseco Life cannot meet its burden of proof. For all of the reasons stated in this opinion, Ms. Smith's cross-motion is also denied.

### V. CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is **DENIED**, Defendant Ms. Masino-Heady's motion for summary judgment is **DENIED**, Defendant Ashley Smith's motion for summary judgment is **DENIED**, and Defendant Masino-Heady's motion to strike is **GRANTED**.

s/Susan D. Wigenton, U.S.D.J

Orig: Clerk
Cc: Madeline Cox Arleo, U.S.M.J.
  Parties